IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| JAIME BRUCE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-11-245 |
| | § | |
| INTERNATIONAL FOUNDATION | § | |
| FOR EDUCATION & SELF-HELP | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable Kenneth M. Hoyt, United States District Court Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), is Defendant International Foundation for Education and Self-Help's Motion to Dismiss for lack of personal jurisdiction. Dkt. No. 3. Plaintiff Jaime Bruce filed a Response in opposition to Defendant's Motion (Dkt. No. 6), to which Defendant filed a Reply. Dkt. No. 7. On August 1, 2011, Plaintiff filed a Sur-Reply (Dkt. No. 11) and Defendant then filed a Response to the Plaintiff's Sur-Reply. Dkt. No. 15. Having carefully considered the Defendant's Motion, the responses and replies, the exhibits submitted, and the applicable law, the Court now submits this Report and Recommendation to the District Court.

## I. BACKGROUND

In or around October 2009, Jamie Bruce ("Bruce), a resident of Texas, traveled to the Republic of Djibouti, Africa, to participate in a program to teach English. The program was sponsored by Defendant International Foundation for Education and Self-Help ("IFESH"). While

in Djibouti, Bruce was involved in a motor vehicle accident which occurred on February 6, 2010, and she sustained serious injuries.[1]  Dkt. No.1.

Thereafter, on May 10,2011, Bruce brought this action in a state district court in Texas against Defendant IFESH for the injuries she sustained in the accident.  Dkt. No. 1.   Bruce alleges that her injuries were the result of the negligent and/or gross negligent conduct of Defendant IFESH, directly by and through its agents, servants and/or employees, in Djibouti.  *Id.* 1 at 3-4, ¶¶ 8-10.   On June 3, 2011, Defendant IFESH removed the case from state court to federal court based on diversity jurisdiction.  *Id.*   Defendant IFESH then filed this Motion to Dismiss contending that all of the claims against it should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  In particular, IFESH contends that Bruce makes no allegation that it had continuous or systematic contacts with the State of Texas, which is needed to exercise general jurisdiction over them; and that specific jurisdiction is also lacking.  Dkt. No. 3.  Bruce responds that Defendant IFESH's contacts with Texas in particular and the United States in general are sufficient to support the court's assertion of personal jurisdiction over IFESH.  Dkt. No. 6.

---

[1] According to the accident report, Bruce was a passenger, along with another American, in a Ranger extended-cab pickup which belonged to the Ministry of National Education. Dkt. No. 6-4 at pg. 5 of 15.  The driver of the pickup "was moving fast and the driver came out of the turn improperly on the left side and ran head-on into a SCANIA Ethiopian trailer truck." *Id.*  The driver of the pickup, who was killed in the collision, was an English language inspector in the department for the National Education General Manager of Teaching. *Id.* at p. 14 of 15.  Bruce was taken to and treated at the local hospital in Djibouti, Africa.  Thereafter, she was transferred to another hospital and, ultimately, at her parents' request, was transported to a hospital in Houston, Texas.

## II. STANDARD OF REVIEW

"Personal jurisdiction . . . represents a restriction on judicial power as a matter of individual liberty." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotations and citation omitted); *see also*, FED. R. CIV. P. 12(b)(2) (a court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction). Once a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(2), as IFESH does here, the plaintiff "bears the burden of establishing the district court's jurisdiction over the defendant." *Mink v. AAAA Development L.L.C.*, 190 F.3d 333, 335 (5th Cir. 1999); *see also*, *Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required only to present facts sufficient to constitute a *prima facie* case of personal jurisdiction. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). Plaintiff "can make this showing through [her] own affidavits and supporting materials, containing an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). The court must accept as true the party's uncontroverted allegations and resolve any factual conflicts in favor of the party seeking to invoke the court's jurisdiction. *Cent. Freight Lines*, 322 F.3d at 380. The law, however, does not require the court to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

## III.  EVIDENCE SUBMITTED BY PARTIES

The evidence before the Court, in the form of affidavits and other documents, reflects the following facts:

1.  Jaime Bruce is a teacher whose experience has largely come from teaching abroad.  For example, from August 2006 to June 2007, she was an ESL teacher for students in Egypt; from August 2007 to June 2008, she was a classroom teacher for students in Egypt; and from August 2008 through the 2009 school year she taught international students in China.  Dkt. No. 3, Ex. A (Elmer Declaration), Attach. 1.

2.  Bruce learned about IFESH"s International Educators for Africa (formerly known as the Teachers for Africa) program from various internet sites, which she explained included IFESH's own website, other websites for teachers and websites hosting teacher forums.  Dkt. No. 3, Ex. A, Attach 1; Dkt. No. 6, Ex. A & Ex. C at 2, ¶8.

3.  IFESH, which is incorporated as a 501(c)(3) non-profit, charitable organization, organized under the laws of Pennsylvania and headquartered in Arizona and with regional offices in Africa, operates humanitarian programs in 12 sub-Saharan African countries and enrolls volunteers to assist with its efforts, which includes education.  Dkt. No. 3, Ex. A at 2, ¶¶4-5.

4.  On February 6, 2009, while living and working in China, Bruce completed and submitted an application electronically for a teaching program in Africa through IFESH's website.  Dkt. No. 3, Ex. A, Attach. 1; Dkt. No. 7, Ex. B (Ewing-Cooks Declaration) at 2, ¶5; *see also*, Dkt. No. 6, Ex. B (IFESH online Volunteer Application form).

5.   In the application, when asked to provide her current mailing address, Bruce responded by informing IFESH that she currently resided in China, that email was the best way to get in touch with her, but that her parents address was 218 Greenshire, League City, Texas 77573.  Dkt. No. 3, Ex. A, Attach. 1.

6.   From February through May, 2009, while she was still in China, Bruce stated that she "had email contact with IFESH regarding the Teachers for Africa ("TFA") program.  Dkt. No. 6, Ex. C (Bruce Declaration) at 2, ¶8.

7.   On June 15, 2009, Bruce's teaching assignment in China ended and sometime thereafter she returned to her parents' home in League City, Texas.  Dkt. No. 6, Ex. C at 3, ¶9.

8.   On July 16, 2009, Barbara Ewing-Cooks, a program recruiting officer for the Teachers for Africa Program and International Fellows program in Arizona, sent an email to Bruce informing her that she had been "selected to participate in the IEFA program to teach in Djibouti [Africa]" and that she would be sending her more information, including her acceptance package, in the week to follow.  She also requested her current mailing address and phone number.  Dkt. No. 3, Ex. A, Attach. 2; Dkt. No. 6, Ex. C, Attach. 1; Dkt. No. 11, Ex. A at 2, ¶8.

9.   Bruce responded to Ewing-Cooks' email the same day, inquiring about whether the program for which she was accepted was the same program for which she applied.  On July 17-18, 2009, the two exchanged emails regarding some details of the program.  Ewing-Cooks informed Bruce that, if she accepted the position, she would need to attend an orientation in Arizona in late August and, while she was "not for sure where [Bruce] [was] now," that the organization would "pay for [her] airfare to the U.S."  Dkt. No. 3, Ex. A, Attach. 2; Dkt. No. 6, Ex. C, Attach. 1.

5

Ewing-Cooks then referred Bruce to IFESH Director, Mr. Momodou Mambouray, to answer any additional questions she had concerning the program.  *Id.*

10.   On July 22, 2009, Ewing-Cooks sent Bruce an email with the subject line reading "Are  you back in the States."  Dkt. No. 3, Ex. A, Attach. 2; Dkt. No. 6, Ex. C, Attach. 2. According to Ewing-Cooks, "[a]t no point on or before July 2009 was [she] or anyone else at IFESH aware that Jaime Bruce claimed to be a permanent resident of Texas."  Dkt. No. 11, Ex. A at 2, ¶9.

11.   Bruce responded to Ewing-Cooks email on July 23, 2009, and informed her that she was back in the States, that she had spoken to Mr Mambouray, and requested that Ewing-Cooks send the information package to her at her parents address in League City, Texas, so she could review all the details before making her final decision. Dkt. No. 3, Ex. A, Attach. 2; Dkt. No. 6, Ex. C, Attach. 2.

12.   A "July 2009" letter was sent from IFESH President and CEO Julie Sullivan to Bruce at her parents' address in League City, Texas.  In the letter, Sullivan informed Bruce that, subject to an interview, she had been accepted into the program and would be assigned to Djibouti. Accompanying the letter, Sullivan provided Bruce with the job description, an information package, a medical package and an Acknowledgment Form to confirm her acceptance into the program.  Dkt. No. 11, Ex. A.

13.   While at her parents' home in League City, Texas, Bruce was interviewed by Mr. Mambouray over the phone.  Dkt. No. 6, Ex. C at 4, ¶14.

14.  Bruce accepted the position and, at IFESH's expense, she traveled to Arizona where she attended IFESH's orientation program from August 27, 2009, to September 5, 2009.  Dkt. No. 3, Ex. A, Attach. 3 at cover; Dkt. No. 6, Ex. C at 5, ¶16.

15.  On September 5, 2009, while in Arizona, Bruce signed IFESH's International Educators for Africa Participant Agreement.  The Agreement provided that it would be governed by the laws of Pennsylvania.  Dkt. No. 6, Ex. C at 5, ¶16 & Attach. 3.

16.  Before leaving for Africa, Bruce obtained the necessary (required) vaccinations in Texas.  Dkt. No. 6, Ex. C at 5, ¶15.

17.  On or around October 1, 2009, at IFESH's expense, Bruce departed from Texas for the Republic of Djibouti, Africa.  Dkt. No. 6, Ex. C at 5, ¶16.

18.  On February 6, 2010, Bruce was a passenger in a vehicle that was involved in a motor vehicle accident in Djibouti.  Dkt. No. 6, Ex. C at 5, ¶17 & Ex. D (Accident Report).  Bruce sustained serious injuries in the accident and was initially taken to the hospital in Djibouti for treatment. Dkt. No. 6, Ex. C at 5, ¶17.  Thereafter, she was transported to Paris, France, where she stayed for approximately five weeks while receiving medical care.  *Id.*

19.  At the request of her parents, Bruce was transported to Memorial Herman Hospital in Houston, Texas, for further treatment.  Dkt. No. 3, Ex. A, Attach. 4; Dkt. No. 6, Ex. C at 5, ¶17.

20.  After being released from the hospital, Bruce returned to her parents' house in League City, Texas.  Dkt. No. 6, Ex. C at 5, ¶17.

21.  Bruce received a 1099 Form from IFESH at the League City, Texas, address.  Dkt. No. 6, Ex. C at 6, ¶18.

7

## IV.  DISCUSSION

### A.  Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution.  *Panda Brandywine*, 253 F.3d at 867.  The Fifth Circuit has explained that "[t]hese two steps collapse into one for our purposes because the Texas Supreme Court has established that the Texas long-arm statute extends to the limits of federal due process." *Ruston Gas Turbines Inc. v. Donaldson, Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) (citations omitted).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and the exercise of jurisdiction over that defendant would be fair and reasonable.  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); *see also*, *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310 (1945) and *Milliken v. Meyer*, 311 U.S. 457 (1940)) (exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when "the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions for fair play and substantial justice.'").  In order for a federal court to exercise jurisdiction over a nonresident, both prongs must be met.  *Ruston Gas Turbines*, 9 F.3d at 418.

8

### 1.  Minimum Contacts

The purpose of a minimum-contacts analysis is to protect defendants from being haled into court when their relationship with Texas is too attenuated to support jurisdiction. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).  The court's analysis focuses on the defendant's activities and expectations, and jurisdiction cannot be asserted over defendants absent evidence that the defendants purposefully availed themselves of the privilege of conducting activities in Texas, thus invoking the benefits and protections of Texas laws. *Id.* (citing *Hanson v. Deckla*, 357 U.S. 235 (1958)).  Defendant's activities, "whether they consist of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).

Personal jurisdiction based on minimum contacts can arise in one of two ways—namely, 'those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001); *Freudensprung v. Offshore Tech. Serv. Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).  General jurisdiction arises from a defendant's general business contacts with the forum state regardless of the relationship, or lack thereof, between defendant's particular acts and the cause of action. *Schlobohm*, 784 S.W.2d at 357.  The contacts with the forum state must, however, be shown to be continuous and systematic. *Id.*  In contrast, specific jurisdiction requires a showing that the defendant purposefully directed its activities toward residents of the forum state or otherwise established contacts with the forum state and that plaintiff's cause of action arises from and relates to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Schlobohm*, 784 S.W.2d at 357.  A mere

9

showing of unilateral activity by the plaintiff will not suffice.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

Bruce has clearly asserted special jurisdiction exists over Defendant IFESH.  In addition, while less than clear, it appears that she may also have asserted general jurisdiction over IFESH. This Court, therefore, examines both grounds in this Report and Recommendation.

### a.  General Jurisdiction

General jurisdiction may exist over a nonresident defendant despite the fact that the forum state is not directly related to the cause of action.  *Freudensprung*, 379 F.3d at 343; *see also*, *Helicopteros Nacionales* de Columbia S.A. v. Hall,  466 U.S. 418, 414–15 (1984); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).  However, a plaintiff must be able demonstrate that the nonresident defendant's contacts with the forum state are extensive in both their quality and nature.  *Dalton v. R & W Marine*, 897 F.2d 1359, 1362 (5th Cir. 1990).  In short, the nonresident defendant's contacts with the forum state must be "'sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'"  *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (additional citations omitted)).  The Fifth Circuit has previously cautioned that "[t]he 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'"  *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (quoting *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)); *see also*, *Holt Oil & Gas*, 801 F.2d at 777 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) ("even repeated contacts with forum residents by a foreign defendant may not

constitute the requisite substantial, continuous, and systematic contacts required for a finding of general jurisdiction …").

In the present case, the evidence before the Court reflects that Defendant IFESH is a nonresident corporation that is headquartered in Arizona and that has no agents or employees in Texas.  Nonetheless, to the extent that Bruce is claiming general jurisdiction exists, her argument appears to rest on the following contacts between IFESH and Texas: (1) IFESH Director, Mr Mambouray, flew to Dallas to interview other applicants; (2) IFESH's Ewing-Cooks offered her a position in the program, which she ultimately accepted, while she resided in Texas; (3) IFESH required its applicants to receive vaccinations before participating in the overseas program and Bruce had hers done in Texas; (4) IFESH paid Bruce's round-trip expenses when she flew from Texas to Arizona to attend orientation and also paid her airfare from Texas to Djibouti, Africa; and (5) IFESH paid for her medical transport back to Texas after the accident.  However, none of these factors, either singly or in combination, constitutes the continuous and systematic contacts with this forum that are required for an exercise of general jurisdiction over IFESH.  *Compare Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445 (1952) (continuous and systematic contacts found to exist where a corporation had temporarily related its principal place of business to a forum state by conducting meetings in the state, maintaining records and bank accounts in the forum state and making all important business decisions in the forum state) *with Central Freight*, 322 F.3d at 381 (continuous and systematic contacts did not exist despite the fact that APA arranged and received shipments to and from Texas and sent sales people to the forum on a regular basis to develop business, negotiate contracts and service national accounts); *Wilson v. Belin*, 20 F.3d 644, 649-51 (5th Cir. 1994) (concluding that court lacked general personal

jurisdiction over nonresident defendant despite the fact that defendant had a relationship with a Texas law firm and engaged in various professional and pro bono projects in Texas over a period of several years); *see also*, *Moki Mac River Expeditions v. Drugg*, 270 S.W.3d 799 (Tex.App.–Dallas 2008, no pet.) (contacts with Texas insufficient to support exercise of general jurisdiction).

To the extent that Bruce also asserts that Defendant IFESH's interactive website, combined with these other factors, constituted a basis for the exercise of general jurisdiction, the Court must, respectfully, disagree. In determining whether the operation of a website could support the minimum contact necessary for the exercise of personal jurisdiction, the Fifth Circuit indicated that it would be guided by the approach discussed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). *Mink*, 190 F.3d at 336. In *Zippo* the court used a "sliding scale" to measure an internet site's connections to a forum state. *Zippo*, 952 F.Supp. at 1124. For example, the court explained that on one end of the scale were "passive" websites—ones that merely allowed the owner to post information on the internet; whereas, on the other end of the scale were highly "interactive" websites—ones with owners who engaged in repeated online contacts with forum residents over the internet. In between either extreme, were those sites with some interactive elements—ones through which an owner allows for some bilateral information exchange with its visitors. Along this scale, the court determined that passive websites, regardless of whether the website was accessible in the forum state, would not be sufficient to establish personal jurisdiction; websites with some interactive elements would require examination of the interactivity and the nature of the forum contacts; and with the more interactive websites, jurisdiction might be proper. *Id.*

In the present case, IFESH's website appears to fall in the middle spectrum of interactivity because it permitted users to transmit information online to IFESH,[2] however, Bruce makes no allegations that IFESH conducted business over the Internet by entering into contracts or otherwise engaging in business transactions with Texas residents; nor does she contend that the website permitted users to order or purchase products and/or services online.  Nevertheless, even with a website with this mid-level of interactivity, the exercise of personal jurisdiction over Defendant IFESH based on this website activity is inappropriate.  *Cf. Revell*, 317 F.3d at 470 (court acknowledged that the sliding scale approach might "not [be] well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required…."); *see also*, *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 343 F.Supp.2d 208, 212, 214 (S.D. N.Y. 2004) (for purposes of a personal injury action the court concluded that the manufacturer of a train could not be subject to personal jurisdiction in Texas based on "middle ground" website that allowed individuals to submit their resumes and cover letters).

In sum, the Court finds that the facts are not sufficient to support the exercise of general personal jurisdiction over Defendant IFESH in this action.

### b.  Specific Jurisdiction

Bruce asserts that the Court may exercise specific jurisdiction over Defendant IFESH based on the following:  (1) IFESH knew she was a Texas resident when they "recruited" her; (2) IFESH sent both the program information and the acceptance form to her address in Texas;

---

[2] IFESH's website permits users to view their program(s) and submit their application electronically.

13

(3) IFESH conducted a telephone interview with her while she resided in Texas; (4) she accepted IFESH's offer while in Texas; (5) IFESH required her to obtain vaccinations for the program, which she had done in Texas; (6) IFESH required her to attend its orientation and paid her expenses for doing so; (7) IFESH paid her travel expenses to fly from Texas to Africa; and (8) IFESH paid for her medical transport back to Texas after the accident.

Regardless of how Bruce delineates the alleged contacts, the crux of her argument is that IFESH knew she was a Texas resident when they "recruited" and contracted with her to participate in the volunteer teaching program in Africa. Further, implicit in her argument is that but for her partial performance of their agreement and the other contacts, she would not have been injured as a passenger in a motor vehicle accident in Africa. This argument has no merit.

While it is true that a defendant may subject itself to jurisdiction within a forum by reaching out to the forum state through a contract with a plaintiff within that forum (*Central Freight Lines*, 322 F.3d at 382), the fundamental tenet of specific jurisdiction still applies—that the contact with the forum must arise out of or be related to the cause of action. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (explaining that the suit must arise out of or relate to the contacts with the forum, and that the "minimum contacts" cannot simply be an aggregate of all the defendant's contacts with the forum state). The Texas Supreme Court in *Moki Mac* reiterated this requirement. *Moki Mac River Expeditions*, 221 S.W.3d at 575–76 (holding specific jurisdiction can only be established *if* the defendant's alleged liability arises out of or is related to an activity conducted within the forum). Thus, for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial

14

connection between those contacts and the operative facts of the litigation. *Id.* at 580, 585.[3]  When

identifying the operative facts of the litigation, a court is directed to focus its attention on those

facts that will be the focus of the trial.  *See id.*; *Pulmosan Safety Equip. Corp. v. Lamb*, 273

S.W.3d 829, 839 (Tex.App.-Houston [14th  Dist.] 2008, pet. denied).

   In the present case Bruce is not suing Defendant IFESH based on any theory arising out

of the program contract, nor is she suing IFESH as a result of any representations made from its

recruitment process.[4]  Instead, Bruce is suing Defendant IFESH based on allegations that its

negligent or grossly negligent conduct, or that of its agents and/or employees, resulted in or

contributed to the injuries she sustained in the motor vehicle accident in Djibouti on February 6,

2009.  It is those facts that will be the operative facts in the litigation.  Thus, despite her

conclusory contentions to the contrary, any contacts Defendant IFESH may have had with Texas

simply have no substantial connection to the operative facts of this litigation to satisfy due process

concerns.  *See Moki Mac River Expeditions* 221 S.W.3d at 585 (court determined that wrongful

death claim was not substantially connected to the nonresident defendant's contacts with the forum

--------

[3] Although the Fifth Circuit previously indicated that it would follow a "but for" causation test to determine if the contact is sufficiently related to the plaintiff's cause of action (*See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n. 21 (5th Cir. 1981)), the Court has long since retreated from this broad and "judicially unmoored" approach when determining whether due process concerns are satisfied. *Moki Mac*, 221 S.W.3d at 581; *see also, Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (despite fact that plaintiffs would not have been employed with the defendants in Ohio were it not for their activities in Texas, the Fifth Circuit, implicitly rejecting a pure "but-for" approach, concluded that "plaintiff's cause of action [was] not based upon any contract, tort or recruitment in Texas, but upon the alleged violation of two federal [labor law] statutes).

[4] While Bruce relies on numerous migrant worker cases to support her argument for specific jurisdiction, her reliance is misplaced.  Dkt. No. 6 at 4-5 n. 2.  Unlike the instant action, in each of those cases, the plaintiffs claims for breach of contract and/or misrepresentation were based on the defendant's contacts with the forum state.

state for purposes of specific jurisdiction); *Double Eagle Resorts, Inc. v. Mott*, 216 S.W.3d 890 (Tex.App.–Beaumont 2007, no pet.) (claim against Colorado casino that it was negligent for failing to maintain and/or warn of defect in stool did not arise from casino's contacts with Texas, which included direct mail solicitations and other promotional materials for purposes of allowing the Texas court to exercise specific jurisdiction over casino); *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841 (5th Cir. 2000) (concluding that Syrian oil companies were not amenable to specific jurisdiction in Texas because the wrongful death claims of workers killed in Syria were not closely related to the companies' recruiting activities); *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 324-26 (5th Cir. 1996) (finding no specific jurisdiction over a Mexican trucking company that was sued in Texas when a truck hit the plaintiff's mother on a Mexican highway); *Gorman v. Grand Casino of La., Inc.-Coushatta*, 1 F.Supp.2d 656, 658 (E.D. Tex. 1998) (holding that plaintiff's claim of sexual assault by a casino employee did not support specific jurisdiction because the claim did not arise out of the casino's extensive advertising in Texas, but arose from the casino's Louisiana operations); *Luna v. Compania Panamena De Aviacion, S.A.*, 851 F.Supp. 826, 832 (S.D. Tex. 1994) (holding no specific jurisdiction in Texas plaintiff's death in a plane crash over Panama based upon "the fact that she purchased the ticket for her airline travel in Texas"); *Kervin v. Red River Ski Area, Inc.*, 711 F.Supp. 1383, 1389 (E.D. Tex. 1989) (holding plaintiffs could not assert specific jurisdiction over nonresident ski resort because their negligence claim did not arise out of its advertising contacts with Texas but arose as a result of the resort's alleged negligence in failing to maintain a safe premises in New Mexico).  As such, the Court finds that Bruce has failed to meet her burden of proving a *prima facie* case for the exercise of specific jurisdiction based on IFESH's contacts with Texas.  *See*

*Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999) (explaining that a party invoking the jurisdiction of the federal court has the burden of establishing minimum contacts justifying the court's jurisdiction over a nonresident defendant).

### 2.  Fair Play and Substantial Justice

In light of the Court's conclusions that Plaintiff Bruce has failed to make a *prima facie* showing that Defendant IFESH had minimum contacts with the State of Texas for purposes of either general or specific personal jurisdiction, the Court need not decide whether subjecting Defendant IFESH to its jurisdiction would violate "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *see also, Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149, 1150-51 (5th Cir. 1984) (explaining that it is unnecessary to consider the second part of this Circuit's "due process" test because "the fairness prong cannot compensate for or overcome the requirement of some minimum contacts with the forum state.").

### B.  Jurisdictional Discovery

Contained in her Response, Bruce argues that she should be entitled to discovery regarding the jurisdictional issue "if the court is inclined to dismiss." Dkt. No. 6 at 12, ¶¶ 30-31.  The district court has broad discretion on whether to permit a party to conduct jurisdictional discovery. *Wyatt v. Kaplan*, 686 F.2d 276,283 (5th Cir.), *reh'g denied*, 712 F.2d 1002 (5th Cir. 1983). However, jurisdictional discovery is generally not permitted where a plaintiff fails to make a *prima facie* showing of personal jurisdiction. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).  Nor should it be permitted where it is unlikely that discovery will yield any useful information. *Wyatt*, 686 F.2d at 28.

Several reasons weigh against permitting jurisdictional discovery in this case.  First, Bruce has failed to make a *prima facie* showing of personal jurisdiction in this case.  Second, she failed to justify any such request.  *See Reese v. Anderson*, 926 F.2d 494, 499 n. 5 (5th Cir. 1991)  (a vague assertions of a need for additional discovery is insufficient).  Finally, the discovery would not add any significant facts.  As such, this Court is of the opinion that Bruce's request for jurisdictional discovery should be denied.

## CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that Defendant's Motion to Dismiss for lack of personal jurisdiction (Dkt. No. 3) be **GRANTED** and that all claims asserted by Plaintiff against Defendant IFESH be **DISMISSED for lack of personal jurisdiction**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **October 5, 2011**, in which to have written objections filed pursuant to 28 U.S.C. §636(b)(1)(C).  Failure to file written objections within the prescribed time **SHALL** bar the Parties from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____20th_____day of September, 2011.

_____
John R. Froeschner
United States Magistrate Judge